

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD34124 |
| | ) | |
| GLEN EUGENE BROWN, | ) | FILED: July 19, 2016 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Robert N. Mayer, Judge

**<u>AFFIRMED</u>**

Glen Brown raises two points in appealing his bench-tried conviction for attempting to manufacture methamphetamine.[1]

### Point I – Search and Seizure

Facts central to this point are few and easily summarized. Officers went to Brown's trailer with a warrant to arrest him for methamphetamine possession. Brown answered the door and let the officers inside where they encountered thick, odorless,

---

[1] He does not challenge two other convictions and identical concurrent sentences, from the same trial, for possessing methamphetamine.

chemical smoke consistent with an operating meth lab. They arrested Brown, took him outside, and Mirandized him. Brown admitted that a meth lab was active in his bedroom, but refused to give consent for the officers to search.

One officer left for a search warrant. In the meantime, Deputy Haynes arrived. As a narcotics investigator who had investigated hundreds of meth labs, Haynes recognized the smoke as being from a meth lab and took action because, as he later testified, meth labs are volatile and "need to be gotten out of anywhere they could catch fire." Haynes opened the trailer doors, used a fan to ventilate the trailer of dangerous chemical fog,[2] then went in and removed the meth lab which was still smoking. Haynes already had the meth lab when the search warrant arrived.

Brown does not dispute that active meth labs present dangers and exigencies justifying warrantless residential searches.[3] Rather, he argues that ventilating the trailer ended the risk of explosion "such that any exigency that had existed terminated and it was unlawful to then search the trailer without a warrant …," so the court erred in not suppressing that evidence and Brown's subsequent inculpatory statements.

We view the record most favorably to the trial court's refusal to suppress. *State v. Johnson*, 354 S.W.3d 627, 631-32 (Mo. banc 2011). We must credit Haynes'

---

[2] One officer exposed to this chemical fog required emergency room treatment.

[3] "The potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an on-going methamphetamine manufacturing operation." *U.S. v. Walsh*, 299 F.3d 729, 734 (8th Cir. 2002). "Jurisdictions that have tackled the issue have held that the dangers posed by an operating methamphetamine lab are sufficient to constitute an exigent circumstance for purposes of conducting a warrantless search of a residence." *Williams v. State*, 995 So. 2d 915, 920 (Ala. Crim. App. 2008).

testimony that, and why, the smoking meth lab posed danger even after the trailer was ventilated.[4] Thus Point I fails and we need not consider inevitable discovery, based on the search warrant that arrived, as a basis to uphold the trial court's ruling.

## Point II – Insufficient Evidence of Manufacturing

Brown resourcefully and somewhat circularly complains that the State failed to prove "the offense of manufacturing a controlled substance ... in that [he] was charged with attempting to manufacture a controlled substance and the evidence did not prove beyond a reasonable doubt that [he] actually manufactured a controlled substance rather than he attempted to manufacture a controlled substance ...." Some background is in order.

Count II charged Brown with the Class B felony of attempting to manufacture methamphetamine, and "attempt" is what the prosecutor asserted in opening statement, during trial, and in closing argument. The court's final judgment found Brown guilty of the Class B felony charged in Count II, *i.e.*, an attempt offense. Even Brown, in his notice of appeal, agreed that he had been convicted for "attempt to manufacture ...."

Yet Brown now cites the judge's trial-end misstatement (24 days before sentencing and final judgment) finding Brown "guilty of the manufacture and production of a controlled substance ..., the Class B felony."[5] So Brown now argues, to

---

[4] Indeed, "cases have recognized that [meth lab] dangers may continue for some hours." **U.S. v. Lloyd**, 396 F.3d 948, 955 (8th Cir. 2005).

[5] The same misstatement Brown's own attorney later made at the sentencing hearing (our emphasis):

> *As far as the admitting the manufacture of controlled substance*, we made no bones about it during the bench trial. We were not contesting

quote his brief, that the State failed to prove that he "committed the actual manufacture of a controlled substance, but that is in fact what the court found [him] guilty of committing"; that the murky liquid recovered from the meth lab pot "was consistent with steps toward making methamphetamine, but was not actually methamphetamine"; and that we should reverse his Count II conviction and order him discharged.

No remotely similar case is cited by the parties or found by us. We credit Brown's belated ingenuity, but deny his point for several reasons.

First, the premise is incorrect. Despite what the court said during the trial, it adjudicated Brown guilty of the Count II attempt charge for which Brown does not dispute the sufficiency of proof.

Also, to find Brown guilty of manufacturing, the court necessarily had to find him guilty of the lesser-included attempt. *See **Spells v. State***, 277 S.W.3d 343, 351 (Mo.App. 2009)(attempt to manufacture meth is a lesser-included offense of manufacturing meth). Here, an attempt carries the same punishment range as the

guilt. The issue we had was Mr. Brown would like the Appellate Court to look at the situation regarding the search.

While the State submitted some case law regarding the search, I think there was enough of an issue for Mr. Brown to possibly ask the Appellate Court to look at that. So we certainly respect the ruling by the Court here on that issue but it's something Mr. Brown would like a second look at.

He's been -- so we were quite compliant with everyone on that bench trial. He wasn't doing that just to stir trouble and just to try to make the State go through the steps. I wish this were similar to Federal Court where we could plead guilty and reserve our right to appeal. Unfortunately, we could not.

4

completed crime (*id*.), supports the court's final judgment, and is supported by the trial evidence.

Finally, we discern no prejudice from the court's prior misstatement given its correct final judgment. We are not faced with an orally-rendered judgment differing from the written version, in which case the judicial act of rendering judgment would control over the ministerial act of entering it upon the record. ***Massey v. State***, 608 S.W.2d 152, 153 (Mo.App. 1980). A finding of guilt is not a "judicial act" in the same sense as a judgment; guilt findings can be and often are made by lay jurors.[6] Even if we ignore that distinction, we fail to see why a court cannot correct error via judicial act (final judgment) while it still has jurisdiction of a case.

We deny Point II and affirm the judgment of conviction.

DANIEL E. SCOTT, J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

[6] *See* ***State v. Wilson***, 26 S.W. 357, 359-60 (Mo. 1894)(making a verdict is not a judicial act); ***Phelps v. Parker***, 534 S.W.2d 278, 279 (Mo.App. 1976)(noting "clear distinction between a verdict and a judgment"; only the latter "is a judicial action of the court"); ***Kansas City Pump Co. v. Jones***, 104 S.W. 1136, 1137 (Mo.App. 1907)(a judgment is the court's judicial act in pronouncing the sentence of the law upon facts as determined by pleadings and verdict); ***City of Aurora v. Powell***, 383 P.2d 798, 800 (Colo. 1963)(distinguishing judgment, as a judicial act, from jury verdicts or findings of a court).